IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

|  |  |
|---|---|
| JOHN J. HANEY, on behalf of the United States of America,<br><br>    Plaintiff/Relator<br><br>vs.<br><br>CHILDREN'S MEDICAID DENTAL OF COLUMBIA, LLC, d/b/a "SMALL SMILES",<br><br>    Defendant | Civil Case No. 3:08-2562-CMC<br><br><br><br>**FILED UNDER SEAL**<br>**JURY TRIAL DEMANDED** |

# QUI TAM COMPLAINT

RELATOR JOHN J. HANEY brings this qui tam action in the name of the United States of America, by and through his undersigned attorneys J. Preston Strom, Jr. and Mario Pacella, and alleges as follows.

## SUMMARY INTRODUCTION

1.     This is an action by qui tam Relator Dr. John J. Haney, on behalf of the United States, against Defendants Children's Medicaid Dental of Columbia, LLC d/b/a "Small Smiles" to recover penalties and damages arising from the submission of false claims seeking payment from the government. Defendant and its employees knowingly submitted false claims for dental care to the Medicaid program which is funded, at least in part, with federal monies.

1

2.     Dr. Haney began working as a licensed Dentist for Defendant in early November, 2007. It rapidly became apparent that the office emphasized volume over patient care. Dentists were encouraged to perform as many procedures as possible to increase the amount billed per patient. Defendant established "quotas" that Plaintiff and other dentists were required to meet, putting inordinate pressure on employees to perform questionable or unnecessary medical procedures in order to reach arbitrary production goals. Plaintiff witnessed occasions of unnecessary medical care or improper care for the sake of higher billing.

3.     On June 3, 2008, Plaintiff was effectively forced to resign in protest of the fraudulent acts and misrepresentations giving rise to this action.

## PARTIES

4.     Plaintiff Dr. John Haney is a citizen of the State of South Carolina.

5.     Defendant Children's Medicaid Dental of Columbia, LLC, d/b/a "Small Smiles" (hereinafter "Children's Medicaid") is organized under the laws of South Carolina and maintains a store and employs agents in Richland County, South Carolina. Its principal office is in Columbia, South Carolina.

6.     Defendant may be served with process of this Court through its registered agent: National Registered Agents, Inc., 2 Office Park Court, Suite 103, Columbia, SC 29223.

## JURISDICTION & VENUE

7.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq.

8.     This Court maintains subject matter jurisdiction over this action pursuant 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

9.     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because: (i) Children's Medicaid resides in this district; (ii) Children's Medicaid transacts business in this district and

did so at all times relevant to this complaint; and, as averred below, (iii) Children's Medicaid committed acts proscribed by 28 U.S.C. § 3729—acts giving rise to this action—within this district.

10.     With the filing of this complaint, Dr. Haney served a copy of same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

11.     Dr. Haney has complied with all other conditions precedent to bringing this action.

12.     Dr. John Haney is the original source of, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government before filing this action.

## FACTUAL ALLEGATIONS

13.     On October 12, 2007, Plaintiff Dr. John Haney entered into an Employment Agreement with Defendant Children's Medicaid Dental of Columbia, LLC (hereinafter "Children's Medicaid") that stated Plaintiff's employment would commence on November 1, 2007.

14.     Soon after, from November 5 – 9, 2007, Defendant sent Plaintiff to Colorado for a national training program conducted by its parent dental management company. Upon information and belief, all new hires of Defendant were sent to Colorado for training before beginning to work in the local office.

15.     During the "training" week, Defendant emphasized the importance of performing pulpotomies and putting on crowns, as these were the most profitable Medicaid procedures for which a dentist could bill.

16.     When Plaintiff returned to Columbia to begin working for Defendant, he noticed that management, specifically Dr. Victoria Fletcher-Barnes, was billing new dentists' Medicaid work

under her Medicaid provider number until the new dentists received their Medicaid numbers. However, Dr. Fletcher-Barnes signed off and billed for this work without checking any medical charts to see if the work was even done, let alone medically necessary.

17.    Children's Medicaid initially forbade parents from coming into the treatment area with their children. This allowed the dentists to have blanket approval to perform "all treatments necessary."

18.    Defendant and its employees put inordinate pressure on Plaintiff and other dentists to perform unnecessary or questionable medical procedures on pediatric patients. When Plaintiff and other dentists did not reach these arbitrary "quotas," Defendant would refuse to purchase vital and necessary supplies needed to treat patients since the Dentists had exceeded the arbitrary $11/per patient fee set by Defendant that was based on profit and not the interests of the patient. At one point, two thousand dollars was needed to make repairs to the office and Plaintiff and other dentists were told no supplies would be ordered that week, regardless of medical necessity. Plaintiff and other dentists were consistently told that the supply budget would be determined by whether they met daily production quotas.

19.    Defendant had an established "bonus program" that rewarded Plaintiffs and other dentists for over average production, *not* for quality of care. Defendant's bonuses were tied to a collective "quota system" and, regardless of quality of care, *quantity* of care is all that was considered for bonuses. Defendant did not tell Dr. Haney what the production requirements or "quotas" were during the negotiations process or during training. Not until Plaintiff returned from training in Colorado, was he provided a written "Bonus Structure" stating the bonuses he could earn for achieving above average daily production based on the office's collective quota requirements. Plaintiff also then found out that the quota was an astronomical sixteen thousand

($16,000) dollars per day. This was the amount for as little as two dentists working at one time. Defendant also told Plaintiff that it set a quota for seeing 150 patients per day.

20.     Plaintiff and other dentists were often required to shoulder an unreasonable burden of work, including being required to treat the same overall "quota" of patients when one of the Dentists was out of the office. The workload put on the Dentists at Children's Medicaid was overwhelming, unreasonable, and put patients' health at risk. Dentists were often required to see back-to-back scheduled patients, perform several hygiene visits, and deal with emergency dental patients all during the course of one day so as to bill as much work as possible.

21.     Defendant's collective quotas and encouragement to perform more expensive procedures, whether or not they were necessary, put inordinate pressure on Plaintiff and other dentists to perform more expensive dental procedures, such as putting crowns on children's baby teeth or performing pulpotomies, where such procedures could have been less expensive or unnecessary.

22.     When young children came in with approximately 2 – 6 teeth, hygienists would clean those teeth with a toothbrush. Upon information and belief, these services were then improperly billed as a full cleaning.

23.     Furthermore, Plaintiff was reprimanded by superiors, including Dr. Victoria Fletcher-Barnes, for "excessive referrals", i.e., for sending patients out to other dentists or doctors, regardless of whether it was a proper medical judgment. Plaintiff referred patients to pedodontists (children's dental specialists) for oral sedation when he felt it was in the best interest of the patient. Superiors at Children's Medicaid consistently discouraged referrals to outside pedodontists, regardless of medical necessity, in order to retain the Medicaid billing.

24.     To increase the amount of procedures that could be done in one visit, Defendants used a medical device called a "papoose board" that restrained children from moving. Children were

wrapped in the device so that their arms and legs were immobile. This allowed the dentists to go quicker and perform as many procedures as possible.

25. Defendant's receptionists scheduled unreasonable numbers of patient visits each day so that Plaintiff could not adequately treat each patient. Superiors at Children's Medicaid also put pressure on Dentists to do additional procedures in order to meet daily and monthly "quotas" and discouraged Dentists from referring out children that needed sedation, encouraging them to use a papoose board so that Children's Medicaid could bill for the patient rather than send them out. This was done with complete disregard for what was best for the patient and with primary emphasis on making a profit. Defendant also made Plaintiff and other Dentists fill out explanatory forms every time a treatment plan was not completed and, despite valid justifications by Dentists, frowned upon *any* non-completion regardless of the reason.

26. Defendant allowed non-certified dental assistants to administer and monitor nitrous oxide inhalation conscious sedation (dental analgesia). This is in direct violation of South Carolina Law, which states that administering or monitoring general anesthesia or nitrous oxide analgesia cannot be done by a dental assistant unless they have completed certification through a program approved by the South Carolina State Board of Dentistry. SC ST Sections 40-15-82, 40-15-105. Defendants billed Medicaid for the services of these non-certified nitrous oxide assistants.

27. Defendants also allowed non-certified dental assistants to perform x-rays on patients. In one instance, a dental assistant had failed the x-ray certification test twice and was still allowed to take x-rays on patients. Defendant submitted claims for reimbursement for those x-ray services.

28. Superiors at Children's Medicaid created a hostile work environment that Plaintiff could no longer tolerate; superiors such as Dr. Victoria Fletcher-Barnes encouraged and endorsed

6

unnecessary procedures and Plaintiff suffered stress from being pressured to perform unnecessary medical procedures urged by management. Plaintiff was effectively forced to resign for health reasons; high blood pressure and stress he suffered as a result of Defendant's hostile work environment prohibited him from being able to continue working.

### COUNT I: Violations of the False Claims Act

29.     Plaintiff realleges and reiterates the allegations contained in previous paragraphs as if fully restated herein verbatim.

30.     As described in this Qui Tam Complaint, Defendant Children's Medicaid, by and through its officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States Government, a false or fraudulent claim for payment or approval; and (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31.     Defendant Children's Medicaid authorized and ratified all the violations of the False Claims Act committed by its various officers, agents, and employees.

32.     The United States Government and the public fisc have been damaged as a result of Defendant Children's Medicaid's violations of the False Claims Act.

33.     Dr. Haney requests a jury trial on all issues so triable.

34.     WHEREFORE, Relator John J. Haney, on behalf of himself and the United States Government, prays:

    (i)     that this Court enter a judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's violations of the False Claims Act;

(ii) that this Court enter a judgment against Defendant for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) that Relator John J. Haney recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(iv) that Relator John J. Haney be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government proceeds with this action, Relator John J. Haney be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) that in the event the United States Government does not proceed with this action, Relator John J. Haney be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) that Relator John J. Haney be awarded prejudgment interest;

(viii) that a trial by jury be held on all issues so triable; and

(ix) that Relator John J. Haney and the United States of America receive all relief to which either or both may be entitled at law or in equity.

/s/ J. Preston Strom Jr.
J. Preston Strom, Jr. (Fed. Bar # 4354)
Mario A. Pacella (Fed. Bar # 7538)
Strom Law Firm, LLC
2110 N. Beltline Blvd., Suite A
Columbia, SC 29204
Tel: 803-252-4800
Fax: 803-252-4801
mapacella@stromlaw.com
Attorneys for Relator

8